## SHERWOOD v. AMERICAN BIBLE SOCIETY.

### December, 1864.

By common law, and in the absence of statutory prohibitions, corporations, in whatever manner created, could take by all the usual methods of acquiring property. By the statute of wills (2 R. S. 57, § 3), they are now prohibited from taking lands by devise, unless expressly authorized by their charters or by statute,* but they may still acquire personal property in any manner.

A foreign corporation is competent to take personalty in this State, by bequest. Although it has no legal existence out of the State of its creation, its existence in that State may be recognized in this State; and its foreign residence creates no insuperable objection to its receiving a gift of money by will from a resident of New York, if it be authorized generally by its charter to take such gifts.†

* A general law. incidentally recognizing the power of certain corporations to take by devise, &c., is not enough to sustain a devise of lands. Jackson v. Hammond, 2 Cai. Cas. 337; Ayres v. Meth. Ep. Ch., 3 Sandf. 351; S. C., 8 N. Y. Leg. Obs. 17.

† Compare Chamberlain v. Chamberlain, 43 N. Y. 424, 432; White v. Howard, 46 N. Y. 144; affirming 52 Barb. 294.

*It seems,* that this would be otherwise if our own law forbade domestic corporations to take such donations.

A bequest to a voluntary and unincorporated body of persons—described as the " Arcot Mission,"—*Held,* invalid for want of a capable legatee.[*]

Gilbert P. Sherwood brought an action in the supreme court against the American Bible Society, the other societies below named, and Mary P. Sherwood, to obtain a construction of the will of Ann P. Sherwood, under which the plaintiff was sole executor, and defendants were legatees. The will, after directing debts, &c., to be paid, provided as follows:

" *Second.* I give and bequeath unto the American Bible Society the sum of two thousand dollars.

" *Third.* I give to the American Tract Society two thousand dollars.

" *Fourth.* I give and bequeath unto the Arcot Mission of the Reformed Dutch Church the sum of three thousand dollars, to be used for the education of the heathen boy on whose account I have heretofore advanced money.

" *Fifth.* I give and bequeath unto the American Colonization Society one thousand dollars."

" *Sixth.*" A bequest not necessary to mention.

" All the residue I give and devise unto my two children, Gilbert and Mary P. Sherwood, share and share alike.

" I hereby appoint my son Gilbert sole executor."

The complaint alleged that doubts had arisen whether the bequests to the societies above mentioned were valid; and whether said societies were incorporated, or if incorporated, whether they could, by their acts of incorporation, severally take the bequests mentioned in the will.

The will was dated Dec. 16, 1858, and the testatrix died Dec. 28, 1858.

Mr. Justice GROVER, who tried the cause, found among other things, that the American Bible Society was duly incorporated by a statute of this State, passed March 25, 1841, for the purpose of publishing and promoting a general circulation of the holy scriptures without note or comment; that the

[*] As to a bequest to a corporation to be formed, compare Rose v. Rose, p. 108 of this volume; Burrill v. Boardman, 43 *N. Y.* 254.

American Tract Society, was, by a statute of this State, passed May 26, 1841, incorporated for the purpose of printing and circulating religious tracts and publications; that the Arcot Mission of the Reformed Dutch Church, was never incorporated, but was a branch of the Board of Missions of the Reformed Protestant Dutch Church, which Board of Missions, at the time of the date of the will and the death of the testatrix, was not incorporated, but was incorporated by a statute of this State passed in 1860; that the American Colonization Society, was, by an act of the general assembly of the State of Maryland, passed on December 26, 1836, incorporated for the purpose of colonizing the free people of color of the United States, and was by said act of incorporation empowered to take lands by devise, and money, goods or chattels by bequest. He accordingly decided that the several legacies to the American Bible Society, American Tract Society, and American Colonization Society were valid, and should be paid by the executor from the estate, with costs to each of the said legatees to be adjusted; that the legacy to the Arcot Mission of the Reformed Dutch Church was invalid, but that no costs should be allowed to plaintiff or to the Arcot Mission as against each other.

From the judgment entered on this decision, plaintiff, and the defendants, Mary P. Sherwood and the Arcot Mission, appealed to the court at general term, where the judgment was affirmed, with costs of the appeal to be paid out of the estate, to the attorneys of all the parties in the action, including the Arcot Mission, whose costs on the appeal were adjusted at one hundred and thirteen dollars and fifty-four cents.

The plaintiff appealed from so much of the judgment as held the three legacies valid, and as gave defendants costs. Mary P. Sherwood appealed generally; and the Arcot Mission appealed from so much as held its legacy invalid, and as omitted to give costs before the appeal to the general term.

*Alexander W. Bradford,* for the plaintiff, and for Mary P. Sherwood, appellants;—Cited Owens *v.* Meth. Miss. Asso., 11 *N. Y.* 406, as to the powers of corporations; Marshall *v.* Downing, 23 *N. Y.* 366; Tucker *v.* St. Clements' Ch., 3 *Sandf.* 242; see also 15 *Johns.* 383, 2 *Cow.* 675; *Ang. & A. on C.* § 161;

· Curtis v. Hutten, 14 *Ves.* 537; Miller v. Ewell, 27 *Me.* 509; Schemerhorn v. Am. Life & Trust Co., 7 *Wend.* 279; *Lib.* 8 *Code, de her inst.* ; People v. Utica Ins. Co., 15 *Johns.* 383; Bank of Augusta v. Earle, 13 *Pet.* 587; N. Y. Fircman's Ins. Co. v. Sturgess, 2 *Cow.* 675. The clauses of the revised statutes generally as to powers of each class of corporations. Miller v. Ewell, 27 *Me.* 509; *Story Conf. of L.* § 38; Pennington v. Townsend, 7 *Wend.* 279.

*Livingston K. Miller,* for the Arcot Mission;—Cited Hornbeck v. Am. Bible Soc., 2 *Sandf. Ch.* 133; Banks v. Phelan, 4 *Barb. Ch.* 80; N. Y. Inst. for Blind v. How, 10 *N. Y.* 84.; · Shotwell v. Mott, 2 *Sandf. Ch.* 46; Potter v. Chapin, 6 *Paige,* 629; Dewitt v. Chandler, 11 *Abb. Pr.* 459; Williams v. Williams, 4 *Seld.* 525; Goddard v. Pomeroy, 36 *Barb.* 554. As to costs, Rogers v. Ross, 4 *Johns. Ch.* 608; Smith v. Smith, 4 *Paige,* 271; King v. Strong, 9 *Id.* 94; Mitchell v. Blain, 5 *Id.* 588.

*S. H. Thayer,* for American Bible Society, defendant and respondent.

*G. N. Titus,* for American Tract Society and American Colonization Society, defendants and respondents.

BY THE COURT.—WRIGHT, J.—It will be convenient to examine, in order, the validity of the bequests; first, to our own corporations; second, to the foreign corporation; and third, to the voluntary association, styled in the will, the "Arcot Mission of the Reformed Dutch Church."

· 1. In respect to the bequests to the Bible and Tract Societies: These societies were, in 1841, created by the legislature bodies corporate, and invested with the general and incidental powers and attributes of a corporation aggregate at common law. The purposes for which they were formed were specified; · a limitation set upon the amount of income to be derived from property respectively held by them; and it was declared that they should possess the general powers, and be subject to the provisions of the title of the Revised Statutes, " Of the general powers, privileges and liabilities of corporations." *L.* 1841, 266, c. 68; 1 *R. S.* 599. The powers enumerated in the general

statute referred to, were those which at common law pertained
to corporations aggregate, and the statute was but declaratory
of the common law in respect to the rights of such corpora-
tions. The right to take and grant property, was and is of the
essence of every corporation, whether created by license, or
prescription, or legislative act, and in the absence of any stat-
utory prohibition, they may take by all the usual modes of ac-
quiring property. They always had the right at common law
to take personal property *by bequest* (*Ang. & A. on Corp.* p. 111,
§ 6; Matter of Howe, 1 *Paige*, 214; McCartee *v.* Orphan Asy-
lum, 9 *Cow.* 437; Williams *v.* Williams, 8 *N. Y.* 525, 530; Mc-
Donough *v.* Murdock, 15 *How. U. S.* 367; Attorney-General
*v.* Ruper, 2 *P. Wms.* 125; *Grant on Corp.* 116, 117); and I
entertain no doubt that they have that right under our stat-
utes. In the statute enumeration of the general powers of all
corporations is that of *holding*, purchasing and conveying such
real and personal estate as the purposes of the corpora-
tion may require, with the power to *hold* and *purchase* prop-
erty. All other powers necessary to its exercise are given. 1
*R. S.* 599, §§ 1, 3. This includes the power of taking by all
the usual modes of acquiring property not forbidden to cor-
porations by the statute. The statute of wills prohibits them
from taking lands by *devise* unless expressly authorized by
their charters, or by statute (2 *R. S.* 57, § 3), but there is no
statute imposing any prohibition in respect to the manner of
their acquiring personal property. The same legislature which
enacted the statute concerning corporations, enacted the pro-
hibition in the statute of wills; but unless the power to take
lands by devise was embraced in the statutory grant of powers
to corporations, the enactment of the prohibition was unneces-
sary. It was, I think, embraced, hence the necessity of the
prohibition; and the inference is irresistible that the same
grant of power vested in corporations the capacity of taking a
pecuniary gift by will.

It is urged that the statute has restricted corporations to the
acquisition of personal property by *purchase* in the ordinary ac-
ceptation of the term; but the interpretation has been repu-
diated by this court. In Downing *v.* Marshall, 23 *N. Y.* 366,
it was held that the two corporations, the capacities of which

we are now considering, were free to take money or personal property by testamentary gift, though it was to be raised by a conversion of real estate. The gifts, therefore, to the American Bible Society and the American Tract Society, were not invalid for want of power or capacity, as corporations, to take them, and this is the only ground urged against their validity.

2. As to the bequest to the American Colonization Society: This is a foreign corporation, created for the purpose of colonizing the free people of color of the United States, and was expressly empowered by its charter to take money, goods and chattels by bequest. The objection, therefore, of want of capacity to receive a testamentary gift has no application. But it is said that corporations are artificial beings, created by the sovereign authority, and can have no existence, nor exercise any of their powers beyond the jurisdiction of the sovereignty which creates them. It is true that the corporation in question can have no legal existence outside of the State of Maryland, but its existence there may be recognized in this State; and its residence in Maryland creates no insuperable objection to its receiving a gift of money by will from a resident of New York, it being authorized generally by its charter to take such gifts. Of course, the exercise of this power depends for its validity upon our laws, and upon the sanction, express or implied, of the State; and so does the exercise, within our jurisdiction, of all other powers of corporations of another sovereignty. By comity we recognize the existence of a corporation in another State, and permit it to exercise the powers with which it is endowed, in our own, unless such exercise is repugnant to our policy, or injurious to our interests. It is not more contrary to State policy to allow an artificial than a natural person of another State to take a testamentary gift of money from a donor residing here. This would undoubtedly be otherwise if our own corporations were without the faculty of taking such donations; for a prohibition upon the latter would be a plain indication of State policy on the subject. But as has been seen, our corporations are free to take personal property by bequest. The gift, therefore, to the American Colonization Society was not invalid.

3. The remaining bequest, the validity of which is ques-

tioned, is, in the words of the will, to "the Arcot Mission of
the Reformed Dutch Church, to be used for the education of
the heathen boy on whose account I have heretofore advanced
money." The Arcot Mission was a voluntary association of
male and female missionaries, located in southern Asia. This
body of missionaries had its own officers, a secretary and treas-
urer, and was, at the death of the testator in 1858, associated
with, or under the control of the board of foreign missions of
the Reformed Dutch Church, a body which was not incorpora-
ted until 1860. The object of the mission was " to preach, and
teach both children and adults, and generally to disseminate
Christianity among the people in the region where it was
located." Its functions were exercised at large, and not with
reference to specific individuals. It cannot be implied from
the expression "to be used for the education of the heathen
boy on whose account I have heretofore advanced money,"
that some particular person was intended by the testatrix. In
connection with the proofs, it is obvious that this and previous
contributions were general—for our heathen boy—a form not
unusual with a continuous charity when no particular re-
cepient is within the view of the donor. Indeed, if it was a
trust credited for the use of a particular person, a single in-
dividual; it would not be a " charity " in a legal sense; for to
constitute a charity the use must be public in its nature. Om-
maney *v.* Butcher, 1 *Turn. & R.* 260. But whether the use be
a charitable or private one, it is invalid, for the reason that
there is no trustee competent to take the fund so as to secure
its appropriation to the purpose intended. Where there is no
trustee appointed having legal capacity to take and hold a
gift, the legal estate can never vest and of course no use can
be raised. There can be no valid trust, unless it be so consti-
tuted that a title can vest in some person natural or artificial
by force of the gift itself. Downing *v.* Marshall, 23 *N. Y.*
366, 382. As was truly said, in Owens *v.* Missionary Soc., 14
*Id.* 380, 406, " to constitute a valid use there must be in all
cases, first, a trustee legally competent to take and hold the
property; and, secondly, a use for some purpose clearly de-
fined." If there be no such trustee in the first instance, the
attempted disposition fails. In fact there is no trust, and a

court of chancery acquires no jurisdiction of the case. It cannot be pretended that the "Arcot Mission," a voluntary and fluctuating body of persons, unknown to the law and irresponsible to the courts, was legally capable of taking the legacy under the will of the testatrix. Indeed the Board of Foreign Missions of the Reformed Dutch Church, under whose auspices the missionary labor at Arcot was conducted, was, at the death of the testatrix, itself incapable of receiving the gift; not having been incorporated for more than a year thereafter.

It may be deemed settled in this State that a voluntary, unincorporated association has not legal capacity to receive a donation, even for a purpose denominated "charitable." In Owens v. Missionary Soc., 14 N. Y. 380, the question was whether a bequest to such an association, for a "charitable" purpose was valid. It was held that it was not, on account of its want of capacity to take the fund and effectuate the charity. So, also, a similar conclusion was reached in Downing v. Marshall, 23 N. Y. 366. There the bequest was to an unincorporated body of persons, known as the Home Missionary Society. The purpose of the trust was religious or charitable. The fund was to be devoted to the same object as in the present case, viz: Christian missionary labor. The bequest was held void for want of a competent trustee.

These conclusions upon the disputed matters in the will accord with those of the supreme court, and lead to an affirmance of its judgment in the suits.

I am in favor of such affirmance, with costs of appeal to the three incorporated societies, to be paid by the executor from the assets of the estate; but without costs of the appeal to the Arcot Mission. Indeed, so much of the judgment of the general term as gave costs of appeal to the Arcot Mission should be reversed.

All the judges concurred.

Judgment affirmed, except as to costs allowed to Arcot Mission, and as to those reversed. Costs of the appeal, to the other societies, respondents, to be paid out of the estate.